**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **Leonard B. Brown, Jr. (LBBJ),** | ) | |
| **Leonard B. Brown, III (LBB3),** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action File No.:** |
| | ) | **1:11-CV-2448-AT** |
| **The City of Dunwoody (COD),** | ) | |
| **Tom LaPenna (TL) and Tom** | ) | |
| **Lapenna in his official capacity,** | ) | |
| **Michael Nier (MN) and Michael** | ) | |
| **Nier in his official capacity,** | ) | |
| **Michael Tuller (MT) and Michael** | ) | |
| **Tuller in his official capacity,** | ) | |
| **Brian Anderson (BA) and Brian** | ) | |
| **Anderson in his official capacity,** | ) | |
| **C.R. Forman (CF) and C.R.** | ) | |
| **Forman in his official capacity,** | ) | |
| **T. Waldron (TW) and T. Waldron** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT**

**STATEMENT OF FACTS**

The City of Dunwoody is a municipal corporation in DeKalb County,

Georgia. On March 30, 2009, the City of Dunwoody Code Compliance Office

received an anonymous complaint regarding the property located at 4851 Happy

Hollow Road.  Depo.  Leonard Brown, Jr., Defs.' Ex. 5 (Sept. 28, 2012).

Following the receipt of the complaint, a city official, inspector Tom LaPenna,

visited the property and observed that a structure on the property was in a state of

disrepair and that the residence's swimming pool was filled with stagnant water.

Aff. Tom LaPenna ¶ 4, Ex. D (Oct. 29, 2012), attached hereto as Defs.' Exhibit 1.

In March of 2009, the City issued a courtesy notice regarding the code violations.

Aff. LaPenna ¶ 4, Ex. A.  In response to this notice, plaintiff Brown, Jr. requested

more specific details regarding the exact code violations found on his property.

Depo. Brown, Jr., Defs.' Ex. 5.  In an April 1, 2009 correspondence, City Attorney

Brian Anderson promptly responded to Mr. Brown, Jr.'s follow-up inquiry and

provided him with a list of the specific code violations found on his property.  *Id.*

The plaintiffs vigorously disputed that the conditions on their property violated any

municipal code or ordinance and, therefore, did not make any repairs.  Depo.

Brown, Jr. 77:1-10; Depo. Leonard Brown, III 38:8-13 (Sept. 28, 2012); Aff.

LaPenna ¶ 9.

City of Dunwoody officials exchanged numerous correspondence with the

plaintiffs regarding the issued notices of code violations found on the property for

several months.  Aff. LaPenna ¶ 7.  In these correspondence, the plaintiffs took the

position that the condition of the pool located on the property was not in violation

of the municipal code.  Aff. LaPenna, Ex. C, pg. 5.  Additionally, plaintiff Brown, Jr. contented that the leaning structure on their property was not in violation of § 304.1 of the International Property Maintenance Code, adopted by the City of Dunwoody, because this provision was "vague, arbitrary, capricious and generally unenforceable."  *Id.*  Due to the plaintiffs' prolonged resistance to address the existing code violations on their property, Code Inspector Tom LaPenna issued Leonard Brown a citation to appear at the municipal court for a hearing.  Aff. LaPenna ¶ 7, Ex E, pg. 2.  Mr. LaPenna served Leonard Brown, Jr. with the citation and notice of the September 16, 2009 hearing by certified mail, which Leonard Brown received on or about August 28, 2009.  Aff. LaPenna ¶ 10, Ex E, pg. 3-4.  The citation provides express language that the "failure to appear before the Municipal Court Judge on the above date and time will result in a bench warrant being issued for your arrest.  It is imperative that you appear for your court date as assigned."  *Id.* at Ex. E, pg. 2.

Leonard Brown, Jr. did not appear for the hearing.  Aff. LaPenna ¶ 8.  Plaintiff Brown, Jr. believes he called the municipal court to inform the court that he was ill and would not be appear at the hearing.  Depo. Brown, Jr. 84:1-6.  Mr. Brown, Jr. did not submit any written requests to the court for a continuance or to provide notice of his inability to attend.  *Id.*  Plaintiff Brown, Jr. did not notify any

of the Dunwoody city officials that he allegedly would not be able to attend the hearing.  Aff. LaPenna ¶ 11.  When he failed to appear for the hearing, the Municipal Court issued a bench warrant for Leonard Brown, Jr.  *Id.* at ¶ 12[1].

City Officials made several efforts to reach an understanding with the plaintiffs regarding their concerns about the code violations on the property.  City officials even attempted to set up a meeting with Leonard Brown, Jr. to discuss the matter.  Depo. Brown, Jr. 43:18 to 44:9; 46:16 to 47:7.  Leonard Brown, Jr. refused to attend the scheduled meetings because he felt he could not trust the City officials.  *Id.*

In the City's continued attempts to have the unsafe conditions on the property addressed, Inspector LaPenna issued an October 30, 2009 repair order, which provided the plaintiffs with forty-five (45) days to bring the property up to code.  Aff. LaPenna ¶ 13, Ex. F.  The plaintiffs pursued various appeals to have the issued repair order repealed in the Dunwoody Municipal Court, with the City of Dunwoody Construction Board of Adjustments and Appeals and the DeKalb County Superior Court.  Depo. Brown, Jr. 37:15-18; Aff. LaPenna ¶¶ 14, 16.  With no resolution to the matter, City officials set another hearing before the Municipal Court.  *See* Notice and Warrant, attached hereto as Defs.' Exhibit 2.

---

[1] Leonard Brown, Jr. was later arrested on March 23, 2010, pursuant to the issued bench warrant. Depo. Brown, Jr. 51:23 to 52: 4; Aff. LaPenna ¶ 15.

Despite his receipt of notice of this hearing, Leonard Brown, Jr. did not appear for the hearing and the court issued another bench warrant to compel his appearance before the court. *Id.*

Following the entry of the warrant in their system, City of Dunwoody police personnel made attempts to execute the bench warrant at Leonard Brown, Jr.'s residence at 4851 Happy Hallow Road.   Depo. Brown, III 21:1 to 22:12.   When the residents of the property informed law enforcement personnel that Leonard Brown, Jr. was not home and declined to invite the officers in to search, the officers left.  *Id.*  On June 16, 2010, Officers Tim Waldron and Chris Forman attempted to execute the bench warrant issued for Leonard Brown, Jr.  Aff. Tim Waldron ¶ 3 (Oct. 30, 2012), attached hereto as Defs.' Exhibit 3.

The officers arrived at the residence and knocked on the front entrance door. Aff. Chris Forman ¶ 6 (Oct. 30, 2012), attached hereto as Defs.' Exhibit 4.  A white male came from the side area of the property.  Aff. Waldron ¶ 5.  The individual, later identified to be Leonard Brown, III, had a disheveled and unshaven appearance.  Aff. Waldron ¶ 5; Aff. Forman ¶ 6.  The uniformed officers informed Mr. Brown, III that they were there to execute a bench warrant for Leonard Brown, Jr.  Aff. Waldron ¶ 6.  The individual, plaintiff Brown, III, informed the officers that Leonard Brown, Jr. was in Florida.  Depo. Brown, III

47:19 to 48:10.  Plaintiff Brown, III was notably hesitant in his responses and was "suspicious" of the officers.  Depo. Brown, III 49:6-7; Aff. Forman ¶ 7.

Uncertain as whether this individual was a resident of the household, a trespasser or an intruder, the officers requested that he produce his identification. Aff. Waldron ¶ 8.  Plaintiff Brown, III initially informed the officers that his identification was in his car but then stated that his identification was in the house. Depo. Brown, III 48:13 to 49:3.  As Plaintiff Brown, III turned to enter the residence, he ran inside the residence and bolted the doors.  Depo. Brown, III 49:20-21; Aff. Waldron ¶ 9.  From the officers' perspective, with the individual's identity still unknown and his potential status as an intruder, the officers approached the side entrance door to pursue the unidentified individual.  *Id.* at ¶ 10.

Officer Forman reached the doorknob and felt the doorknob turn.  Aff. Forman ¶ 14.  As Officer Forman pushed on the door while turning the doorknob, the door popped open.  *Id.* With the door opened, the officers were able to observe the individual moving away from the area at a quick pace.  Aff. Forman ¶ 14; Aff. Waldron ¶ 11.  Officer Forman shouted several times for the individual to stop, but he continued to move away from the officers in a hurried pace.  Aff. Forman ¶ 14. The officers withdrew their Tasers and Officer Forman informed the individual

6

that if he did not stop he would be Tasered.  Aff. Waldron at ¶ 12; Aff. Forman ¶

15.  Plaintiff Brown, III stopped but refused to follow the officers' additional

commands.  Aff. Forman ¶ 15.  Following his refusals to comply with Officer

Forman's verbal requests, Officer Forman escorted the individual to the ground

and placed him in handcuffs to control the scene and ensure the safety of the fellow

officer and the unidentified individual.  Aff. Forman ¶ 16.   The individual, through

his identification, was identified as Leonard Brown, III and arrested for

obstruction.  Aff. Forman ¶¶ 17, 19.

## I.    THE PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR ITS FAILURE TO SET FORTH SPECIFIC FACTUAL MATTER TO STATE A CLAIM FOR RELIEF.

To survive dismissal, a complaint must contain sufficient factual matter to

state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (129 S.Ct. 1937)(2009).  "Where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not shown—that the pleader is entitled to relief."  *Id.* at 679.  To set forth

a viable cause of action for a §1983 claim, a plaintiff must identify a specific

federal right and demonstrate that a state actor violated the standard of care

provided by that right.  *Gainor v. Douglas County, Georgia*, 59 F.Supp.2d 1259,

1269 (N.D.Ga. 1998).  Thread-bare recitals of the elements of a cause of action

supported by conclusory statements do not suffice to set for a plausible claim for relief to survive a motion to dismiss. *Iqbal,* 566 U.S. at 678-79.

In the instant action, the plaintiffs' complaint fails to set forth specific conduct allegedly committed by the named defendants to support a cause of action under § 1983. As vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each defendant Government-official, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (129 S.Ct. 1937)(2009). While Rule 8 does not required detailed factual allegations, a plaintiff must set forth more than unadorned "the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. In this matter, the plaintiffs' complaint does not identify specific acts of misconduct committed by each of the named defendants. Although several municipal employees are listed in the caption of the plaintiffs' complaint, the complaint fails to specify which named defendant is liable for which wrongful conduct inferred in the pleading. Pls.' Compl., pg. 1.

Additionally, although a conspiracy theory is loosely expressed in the language of the pleadings, the plaintiffs' asserted conspiracy allegations do not fulfill the requirements of Rule 8. In paragraph 12 of the plaintiffs' complaint, the plaintiffs allege that an unidentified individual used the city officials to intimidate

the plaintiffs as a part of his "modus operandi".  Pls. Compl. ¶ 12. The plaintiffs'

complaint does not state which named officials took part in the alleged conspiracy.

The plaintiffs additionally allege that they have "reason to believe" that the

harassment they received in the form of citations and their respective arrests were

possibly done to intimidate and inflict emotional injuries. Pls.' Compl. ¶¶ 2-3, 11.

The plaintiffs go on to allege that the City then generated false documents to cover

up their crimes. *Id.* at ¶ 4.  Bare assertions of conspiracy that allege that the

defendants adopted a policy because of its alleged adverse effect on the plaintiffs

are conclusory in nature and insufficient to prevent the grant of a dispositive

motion.  *Ashcroft*, 556 U.S. at 681. While the plaintiffs' complaint alleges many

conspiracy allegations and infers the existence of improper motives, the complaint

does not plead sufficient acts to state a claim for purposeful and unlawful

discrimination.  The plaintiffs' complaint, therefore, is subject to dismissal.

## II.    THE CITY OF DUNWOODY IS ENTITLED TO SUMMARY JUDGMENT FOR THE PLAINTIFFS' ASSERTED CLAIMS BECAUSE IT DID NOT CREATE A POLICY THAT DELIBERATELY AND INTENTIONALLY CAUSED A CONSTITUTIONAL VIOLATION.

In this matter the plaintiffs have brought claims against various city officials

individually and in their official capacities.  Pls.' Compl., pg. 1.  A suit against a

governmental official in his official capacity is deemed a suit against the entity that

9

he represents. *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999). Thus, the claims asserted against Brian Anderson, Michael Nier, Tom LaPenna, Michael Tuller, C. Forman and T. Waldron in their official capacities constitute claims against the City of Dunwoody. *Brown*, 188 F.3d at 1290. As argued above, the plaintiffs' complaint does not clearly set forth the constitutional or federal rights allegedly violated by the City of Dunwoody. The defendants in this action, therefore, will rebut the existence of constitutional violations under 18 USC §§ 241, 241 and 42 USC § 1983, as alleged in paragraph 1 of the plaintiffs' complaint.

**A.    The City of Dunwoody did not have a policy that encouraged or permitted the commission of constitutional violations against its residents.**

A municipality can only be found liable under § 1983 when the execution of the government's policy or custom inflicts the constitutional tort. *Loggins v. Jeans*, 841 F.Supp. 1174, 1176 (N.D.Ga 1993). To survive summary judgment, the plaintiff must show that the municipality had an official policy that was the moving force of the constitutional violation. *Loggins*, 841 F.Supp. at 1177. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Bd. Of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403-404 (117

S.Ct. 1382)(1997).  When a plaintiff cannot show that the municipality acted

pursuant to an official policy or custom and the record does not reveal any such

policy or custom, the plaintiff has not established that the constitutional violations

at issue involved state action for purposes of §1983.  *See Patrick v. Floyd Medical*

*Center*, 201 F.3d 1313, 1317 (11th Cir. 2000).

    In the instant action, the plaintiffs have not identified a City of Dunwoody

policy that, in its execution, caused the alleged constitutional violations.  It is well

established that municipalities are authorized to enact and enforce reasonable

regulations to protect the health, morals, safety and general welfare of the public.

*HGH Operations, Inc. v. City of Peachtree*, 248 Ga. 500, 501 (283 S.E.2d

867)(1981).  The plaintiffs' in this action do not contest the lawfulness of City of

Dunwoody's general ability to issue code citations; rather, the plaintiffs contest

that the citations issued against them were not properly supported by sufficient

evidence.  Depo. Brown, Jr. 36:3-12; Depo. Brown, III 40:12-20.

    "If a facially-lawful municipal action is alleged to have caused a municipal

employee to violate a plaintiff's constitutional rights, the plaintiff must establish

that the municipal action was taken with deliberate indifference to its known or

obvious consequences."  *Am. Fedn. of Labor of Congress of Indus. Org. v. City of*

*Miami, Fla.*, 637 F.3d 1178, 1187 (11th Cir. 2011).  Thus, to support their liability

claims for the alleged constitutional rights, the plaintiffs must show that the City of Dunwoody's conduct was taken with a deliberate indifference to the obvious consequences. *Am. Fedn. of Labor of Congress of Indus. Org.*, 637 F.3d at 1187.

The plaintiffs have not proffered any evidence that the City of Dunwoody knew its policies would result in constitutional violations. Nor have the plaintiffs put forward evidence that it was obvious such violations would occur from the enforcement of the municipal policy. Although the plaintiffs allege that they have reason to believe that their arrests and other conduct of the City were intended to inflict emotional injury and intimidate them, Pls.' Compl. ¶ 11, the plaintiffs have not come forward with evidence to support these allegations. While the plaintiffs subjectively may believe that the issued citations were baseless, the plaintiffs have no evidence as to any malicious intent in the City's conduct of issuing code violations. Depo. Brown, III 38:1 to 41:3; Depo. Brown, Jr. 47:16 to 50:6.

With regard to the arrests that form the basis of the plaintiffs' complaint, it is undisputed that Leonard Brown, Jr. was taken into custody pursuant to a court executed bench warrant. Aff. LaPenna ¶ 12. Magistrates are generally recognized to hold the authority, as judicial officers, to issue warrants. *See generally Shadwick v. City of Tampa*, 407 U.S. 345, 348 (92 S.Ct. 2119)(1972). Absent evidence of willful conduct, a plaintiff's failure to appear in court as commanded

by a citation is a self-indulged risky act for which the plaintiff's own conduct is sole proximate cause of the plaintiff's injuries. *Weaver v. Pizza Hut of America, Inc.*, 298 Ga. App. 645, 649 (680 S.E.2d 668)(2009). Regarding his arrest, Leonard Brown, III testified that the officers were likely doing their jobs and acting pursuant to instructions by their supervisors. Depo. Brown, III 41:4-17. Thus, there is no evidence of the existence of a policy that served as the driving force behind the plaintiffs' alleged constitutional violations.

    **B.    The City of Dunwoody did not have a custom or practice that implicitly permitted or condoned the commission of constitutional violations.**

As municipalities rarely have official policies that endorse a constitutional violation, a plaintiff seeking to impose liability under § 1983 for a custom or practice, must show that the municipality had a custom or practice of permitting a constitutional violation. *Craig v. Floyd County, Georgia*, 643 F.3d 1306, 1310 (11th Cir. 2011). Even where a plaintiff alleges the existence of such a custom, the custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to prevent it. *Id.* Although plaintiff Leonard Brown, Jr.'s correspondence exchanged with City officials allege that "[the City of Dunwoody]

has an unsavory history of violence, inciting violence and unsavory associations,

the plaintiffs have offered no evidence to support these contentions.

> Q:   Mr. Brown, you put, in your statement we just read, they have "an unsavory history of violence." What is the violence you're referring to?
>
> A:   Well, they -- we have just had a guy die in Roswell from a similar situation, but nonetheless, the -- even in Sandy Springs, they had very aggressive policing for a while. And I'm glad it changed. Glad it did. Whoever was there in the department, they left. But that's what I was referring to, news reports.
>
> Q:   "Inciting violence, " what's the inciting violence?
>
> A:   Well, some of these police officers, particularly they're cast of from other departments, they come to new cities, bring baggage with them, and sometimes they're a little more violent than the folks that grew up in that city and lived in that city and like the police officers of our childhood.
>
> Q:   But you don't have any evidence of that, do you?
>
> A:   Well, just the news reports that we have.
>
> Q:   Nothing beyond the news reports?
>
> A:   Just reports.

Depo. Brown, Jr. 48:24 to 50:1.

Thus, the plaintiffs have no evidence to support their contention that there was a history of violence in the City.

Alternatively, the plaintiffs' allege that the City may have conspired with the "surrogate of a convicted felon" who was "intimately involved with the [City of Dunwoody's movement] and used city official to intimidate them. Pls.' Compl. ¶

14

12.  "To prevail on a § 1983 conspiracy claim a plaintiff must show that an

agreement between two or more people to violate his constitutional rights resulted

in an actual violation of those rights."  *Am. Fed. Of Labor and Congress of

Industrial Org.*, 637 F.3d at 1191. The plaintiffs in this matter could not identify

the alleged "surrogate of a convicted felon," but identified the "felon" as Joe Hale.

Depo. Brown, Jr. 73:1-25.  Although the plaintiffs *believe* that Mr. Hale was

intimately involved with the City, when asked for evidence of Mr. Hale's

involvement, the response was:

> Q:    The evidence of what?  Mr. Hale's –
>
> A:    Mr. Hale's involvement, yeah.
>
> Q:    You don't have the evidence at this point?
>
> A:    Not at this point.

Depo. Brown, Jr. 75:2-6.

Moreover, a municipality cannot be held liable solely under a theory of

respondeat superior for the alleged constitutional injuries inflicted by its

employees.  *Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1317 (11th Cir.

2000); *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)(citing *Monell v.

Dept. of Social Services*, 436 U.S. 658 (98 S.Ct. 2018)(1978).  The City of

Dunwoody disputes that its officials or officers committed any constitutional

injuries in this matter.  Even if the conduct of such officials was actionable, which the City disputes, only city officials who have *final policymaking authority* may render the municipality liable under § 1983.  *Brown*, 188 F.3d at 1290.  The plaintiffs have not demonstrated that the individually named city officials served as "final policy makers" to impute their conduct of allegedly issuing unspecific citations as a custom for the City of Dunwoody.   "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Brown*, 188 F.3d at 1290.

The citations issued by City of Dunwoody inspectors were subject to review by the municipal court, which scheduled hearings regarding the matter, which the plaintiffs did not attend. Aff.  LaPenna ¶¶ 10-12; Depo. Brown, Jr. 79:13-15; Depo. Brown, III 23:4 to 24:13. The plaintiffs had multiple opportunities to present their arguments in a judicial setting but chose to avoid these settings due to their "suspicions".  Depo. Brown, Jr. 44:6-9; 50: 2-15.  Additionally, the plaintiffs' arrests were isolated incidents brought about by their own conduct. *Craig*, 643 at 1310; *Weaver*, 298 Ga. App.  at 649.  Thus, there is no evidence that the City of

Dunwoody had a custom or practice to ignore the commission of constitutional violations by its officials.

### III.  THE PLAINTIFFS' ALLEGATIONS OF THE VIOLATION OF THEIR CIVIL RIGHTS AND VARIOUS PROVISIONS OF FEDERAL LAW IS NOT SUPPORTED BY THE RECORD OR APPLICABLE LEGAL AUTHORITY.

The introductory paragraph of the plaintiffs' complaint alleges that the plaintiffs have brought this action under 18 U.S.C. § 242, 18 U.S.C. § 241, 42 U.S.C. § 1983.  Pls. Compl. ¶ 1.  Under the jurisdictional statement of the complaint, the plaintiffs allege that this Court has jurisdiction over their "claims under the U.S. Constitution, which are both brought directly under 42 U.S.C. § § 1981, 1983, 1985 and 1986."  Pls. Compl. ¶ 6. Based on the evidence in the record, several of the federal statutes cited by the plaintiffs are not sustainable civil claims.

The plaintiffs' claims asserted under 18 U.S.C. § 241 and 18 U.S.C. § 242 fail as a matter of law, as the cited criminal statues expressly provide that they do not create a civil right of action.  Section 242 is the criminal counterpart to § 1983. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1439 (11th Cir. 1985).  This code section is a criminal statute and does not provide a private cause of action. *Anderson v. Dunbar Armored, Inc.*, 678 F.Supp.2d 1280, 1327 (N.D. Ga. 2009). Similarly § 242 is a criminal conspiracy statute that provides for criminal penalties but "does not authorize civil suits or give rise to civil liability." *Durso v. Summer*

*Book Preserve Homeowners Assn.*, 614 F.Supp.2d 1256, 1267-68 (M.D. Fla. 2008).

Section 1981 only applies to race discrimination and conduct which impairs the right to enforce contract obligations through the legal process. *Gorman v. Roberts*, 909 F.Supp. 1493. 1498 (M.D. Fla. 1995). Claims seeking damages under § 1981 must contain some allegations of racial discrimination. *Id.* Similarly, causes of action under 42 U.S.C. § 1985 must assert racial or otherwise class-based, invidiously discriminatory animus. *La Bar v. Royer*, 528 F.2d 54, 549 (11th Cir. 1976). In this matter, the plaintiffs and the alleged conspirators are white males. Depo. Brown, Jr. 55:13-17; Aff. Waldron ¶ 5. The plaintiffs have not offered any evidence that the defendants engaged in the alleged conduct due to race or class-based discrimination. The plaintiffs' claims under §§ 1981 and 1985, therefore, fail as a matter of law.

A cause of action under 42 USC § 1986 cannot survive absent a viable claim for relief under § 1985. *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985); *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985). The plaintiffs' § 1986 claim, is additionally time-barred as a claim for relief under this code section must be brought within one year after the cause of action accrued. 42 USC § 1986. The plaintiffs' complaint alleges that the culpable conduct of the defendants began in

early 2009.  Pls.' Compl. § 2.  As the plaintiffs did not file their complaint until

July 25, 2011, the plaintiffs' claim under this section, therefore, is time-barred.

## IV.    QUALIFIED IMMUNITY APPLIES IN THIS ACTION FOR THE DISCRETIONARY ACTS COMMITTED BY THE CITY OF DUNWOODY EMPLOYEES.

### A.    The City Code Enforcement Officials named in their individual capacities are entitled to qualified immunity.

Qualified immunity, also known as official immunity, protects public agents

from personal liability for discretionary acts made in the scope of their authority.

*Case Assoc. Investigations, Inc. v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009).

The assessment of the applicability of qualified immunity is a two part analysis.

*Lewis v. City of West Palm Beach, Florida*, 561 F.3d 1288, 1292 (11th Cir. 2009).

First, a court must determine whether the official's conduct amounted to a

constitutional violation.  *Id.*  Second, the court analyzes whether the right violated

was "clearly established" at the time of the violation.  *Id.* The intention is to

"ensure that before they are subjected to suit, [officials] are on notice that their

conduct is unlawful." *Id.*

In this matter, the plaintiffs identify the central issue as the allegation that

the property was in an unsafe condition, as alleged by the City, and the City's

conduct of issuing code citations.  Depo. Brown, Jr. 36:3-12; Depo. Brown, III

Defs.' Ex. 6, pg. 2.  Thus, under the first prong of the qualified immunity analysis, this Court must determine if the plaintiffs' allegation of receiving allegedly unsubstantiated code citations constitutes a clearly established constitutional right. *Crosby*, 187 F.3d at 1345.  "For a constitutional right to be clearly established, it must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right."  *Id.*

> To avoid summary judgment it is ***not*** enough for a plaintiff to produce evidence, which—if believed (for summary judgment its truth is assumed)—would allow a fact-finder to find just that the government-agent defendant was, in reality, wrong about the facts on which the defendant acted.  Instead, to defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.

*Post*, 7 F.3d at 1557 (emphasis added).

The City of Dunwoody officials visited the property after the City's receipt of a complaint regarding the condition of the property.  Aff. LaPenna ¶ 3, Ex. C. Finding unsafe conditions on the property when investigating the complaint, city officials began issuing courtesy notices regarding the conditions that they believed posed dangers to the public welfare.  Aff. LaPenna ¶¶ 4-5.  If the facts do not demonstrate a code enforcement department's objective conduct in inspecting for violations and issuing citations or making arrests was plainly unjustified, a plaintiff

does not have a sustainable constitutional claim.  *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993)(reversing denial of summary judgment and held that defendants were entitled to qualified immunity because no case clearly established that issuing three citations and one arguably justified arrest over a thirty day period violated due process).  The Dunwoody city officials are entitled to qualified immunity because their conduct of administering code violations after performing an administrative assessment did not violate a clearly established constitutional right that a government official would have known. *Crosby*, 187 F.3d at 1350.

     **B.**     **Officers Chris Forman and Tim Waldron are entitled to qualified immunity because the June 16, 2010 arrest of Leonard Brown, III was based on arguable probable cause**.

A law enforcement officer sued in his individual capacity may be protected by qualified immunity if he acted within his discretionary authority and his conduct did not violate a clearly established right which a reasonable officer would have known.  *Townsend v. Coffee County, Georgia*, 854 F.Supp.2d 1345, 1355 (S.D.Ga. 2011).  A discretionary act includes all acts taken pursuant to the performance of the officer's duties and within the scope of his authority.  *Id.* at 1356.

Plaintiff Leonard Brown, III asserted claims against Officers Waldron and Forman arise from his June 16, 2010, arrest. Depo. Brown, III 41:4-8. Plaintiff Brown, III alleged the officers are liable for "the home invasion, assault with a deadly weapon [and] false imprisonment." *Id.* In this matter, Officers Chris Forman and Tim Waldron are entitled to qualified immunity if a reasonable officer in their position could have believed that arguable probable cause existed. *Post*, 7 F.3d at 1558. The existence of probable cause is measured by the knowledge held at the moment of the arrest and not an examination of the facts through the benefit of hindsight. *Fuller v. Troup County*, 253 Ga. App. 228, 229 (2002). "When an officer asserts qualified immunity, the issue is not whether probable cause existed in fact, but whether the officer had arguable probable cause to arrest." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993).

On the evening of June 16, 2010, Officers Forman and Waldron traveled to the property located at 4851 Happy Hollow Road, Dunwoody, Georgia to execute a bench warrant issued for Leonard Brown, Jr. Aff. Waldron ¶ 3. When knocking at the front door to execute the warrant, the officers observed a white male coming from the side of the residence. Aff. Forman ¶ 6. Officer Chris Forman informed the individual, later identified to be Leonard Brown, III, that they were present on the property regarding a bench warrant for Leonard Brown, Jr. Aff. Waldron ¶ 6.

22

As the individual had a disheveled and unshaven appearance, the officers requested that he produce identification to verify that he was not an intruder on the property for an unlawful purpose.  Aff. Waldron ¶ 5.

Leonard Brown, III initially told the officers that his identification was in his car but then stated his identification was in the residence.  Depo. Brown, III  48:13 to 49:1.  As Leonard Brown, III began to make his way towards the house, he quickened his pace and increased the distance between him and the officers.  Aff. Forman ¶ 12.  Officer Forman called for the individual to come back but as soon as Leonard Brown, III entered the house, he closed and locked the door.  Aff. Forman ¶ 12; Depo. Brown, III 49:1-21.

Officers Waldron and Forman had arguable cause to arrest Leonard Brown, III for obstruction.  From the officers' perspective, an unidentified person had refused to comply with their requests for identification, refused to halt when commanded and potentially was impeding their execution of a duly executed arrest warrant.  Aff. Waldron.  ¶¶ 5-7; Aff. Forman ¶¶ 11-13.  Georgia courts have ruled that a refusal to provide identification can constitute obstruction pursuant to O.C.G.A. § 16-10-24.  *Gainor*, 59 F.Supp.2d at 1269.  Additionally, "[re]fusing to comply with an officer's command is sufficient to form the basis of an obstruction charge.  *Townsend*, 854 F.Supp.2d at 1358.

In this matter Leonard Brown, III failed to voluntarily produce his identification.  Aff. Forman ¶ 12.  Additionally plaintiff Brown, III refused to comply with Officer Forman's verbal commands to halt outside the residence and inside the residence.  Aff. Forman ¶¶ 12-14.  Despite plaintiff Brown, III's rationalization that he only locked the door because it was his normal practice to do so and due to his mistrust of the officers, Depo. Brown, III 49:1-21, a reasonable officer in Officers Forman's or Waldron's position would not have reason to know of plaintiff Brown, Jr.'s subjective reasons for his conduct.  Even if the officers' interpretation of plaintiff Brown, III's conduct was allegedly wrong, which the defendants dispute, a hindsight application of additional facts will not invalidate an arrest supported by the events at the time of their occurrence.  *Fuller*, 253 Ga. App. at 229-30.

Plaintiff Brown, III additionally alleges that the officers assaulted him when they withdrew their Tasers.  Depo. Brown, III 58:1-4.  When a plaintiff alleges excessive force by an officer in the course of executing an arrest, search or seizure, the plaintiff must show that the officer's conduct was objectively unreasonable. *Moreland v. Dorsey*, 230 F.Supp.2d 1338, 1348 (N.D.Ga. 2002).  It is undisputed that Officers Forman and Waldron did not use their Tasers on Leonard Brown, III and Leonard Brown, III did not sustain any physical injuries as a result of his

arrest.  Depo. Brown, III 58:1-4; 61:9-16.  Additionally, the plaintiffs in this action have not provided the requisite evidence of malice on the part of the officers to demonstrate that Officers Forman and Waldron, lacked probable cause for the June 16, 2010, arrest.  *Fuller*, 253 Ga. App. at 229(holding that a lack of probable cause exists when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused).  Thus, the June 16, 2010 arrest of Leonard Brown, III was executed based upon probable cause and Officers Chris Forman and Tim Waldron are also entitled to qualified immunity.

## **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that this Court grant their motion for summary judgment.

LOKEY, MOBLEY and DOYLE, LLP

/s/ G. Melton Mobley
G. Melton Mobley
State Bar No. 514625
Dawn N. Pettigrew
State Bar No. 409509
Attorneys for Defendants

8425 Dunwoody Place
Atlanta, GA  30350
770-640-9441
mmobley@mobley-doyle.com
dpettigrew@mobley-doyle.com

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing *Defendants' Motion for Summary Judgment and Brief in Support* complies with the font and point selections approved by the Court in LR 5.1 B. The foregoing pleading was prepared on a computer using the Times New Roman font (14 point).

LOKEY, MOBLEY AND DOYLE, LLP

/s/ G. Melton Mobley
G. Melton Mobley
State Bar No.:  514625
Attorney for Defendants

8425 Dunwoody Place
Atlanta, GA  30350
770-640-9441
mmobley@mobley-doyle.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2012, I electronically filed this

Defendants' Brief in Support of Motion for Summary Judgment with the Clerk of

Court using the CM/ECF system which will automatically send email notification

of such filing to the following attorneys of record:

None

I hereby certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants:

Leonard B. Brown, III          Leonard B. Brown, Jr.
4851 Happy Hollow Road         145 Via Havarre
Dunwoody, GA 30360-1645        Merritt Island, FL 32953


LOKEY, MOBLEY AND DOYLE, LLP

/s/ G. Melton Mobley
G. Melton Mobley
State Bar No.:  514625
Dawn N. Pettigrew
State Bar No.:  409509
Attorneys for Defendants


8425 Dunwoody Place
Atlanta, GA  30350
770-640-9441
mmobley@mobley-doyle.com
dpettigrew@mobley-doyle.com